**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

DANIAL WAYNE GUISE,

      Plaintiff,

v.

LEXISNEXIS RISK SOLUTIONS
INC.,

      Defendant.

Case No.

**JURY TRIAL DEMANDED**

## COMPLAINT

This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. §§1681, *et seq.* (the "FCRA"). Plaintiff Danial Wayne Guise ("Plaintiff"), a living, breathing 65-year-old consumer, brings this action on an individual basis, against LexisNexis Risk Solutions Inc. ("Defendant" or "LexisNexis"), and states as follows:

## PARTIES

1. Plaintiff is a natural person residing in Sioux Falls, South Dakota, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

2. Defendant LexisNexis Risk Solutions Inc. ("Defendant" or "LexisNexis") is a corporation with a principal place of business located at 1000 Alderman Drive, Alpharetta, Georgia 30005. Defendant regularly conducts business

- 1 -

in the State of Georgia and is authorized to do so.

3.      Defendant is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Defendant is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

4.      Defendant collects, maintains, and sells highly sensitive consumer information, including detailed data regarding individuals' income, finances, credit and address histories, application and credit-review activity, employment histories, and other proprietary information used by insurers, lenders, employers, and other third parties in making eligibility decisions. Defendant also compiles and disseminates consumers' personal identifiers—such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and residential addresses—thereby functioning as a comprehensive repository of information whose accuracy and integrity are essential to protecting consumers from harm.

5.      Defendant collects and maintains this information about consumers regardless of their consent or preference; consumers have no meaningful ability to prevent Defendant from compiling their data. Nor can consumers remove information that Defendant chooses to store in its databases, even when that information is inaccurate or harmful. Defendant then sells and disseminates these consumer files for its own unilateral profit—profit generated from data about

individuals like Plaintiff, who receive no compensation or control over the information being monetized at their expense.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this district.

## FACTS

### Plaintiff's SSN Changes

8. Upon information and belief, the Social Security Administration mistakenly assigned to Plaintiff a Social Security Number, belonging to another person, with the same name as Plaintiff's.

9. Upon information and belief, in, or around, 1982, the Social Security Administration assigned to Plaintiff a different SSN.

### The Consumer Reporting Agencies ("CRAs") Report Plaintiff as Deceased

10. Upon information and belief, in, or around 2018, Plaintiff discovered the CRAs reported Plaintiff as deceased on his consumer credit reports.

11. Upon information and belief, Plaintiff learned of this error after being denied credit while attempting to purchase a personal residence.

12. Upon information and belief, the erroneous deceased status initially

appeared on Plaintiff's consumer reports maintained by non-parties TransUnion, Equifax, and Experian.

13.    Upon information and belief, Plaintiff disputed the "deceased" notation with the CRAs and, in or around 2021, non-parties TransUnion and Equifax removed the "deceased" notation from Plaintiff's consumer reports while non-party Experian continued to report Plaintiff as deceased.

14.    In or around 2023, Plaintiff began receiving Social Security Administration ("SSA") benefits. Plaintiff has continued to receive SSA benefits on a monthly basis from 2023 to the present. Plaintiff has not experienced any interruption, delay, or missed payment of SSA benefits during this period

15.    Plaintiff received a Benefit Verification Letter from the Social Security Administration dated February 21, 2025, confirming that he had not been reported as deceased as of that date.

## Plaintiff's Damages

16.    Upon information and belief, around April 2024, Plaintiff submitted multiple credit applications in connection with efforts to refinance his house.

17.    Upon information and belief, each of these applications was denied because Defendant furnished information inaccurately listing Plaintiff as deceased, causing creditors to automatically reject Plaintiff's applications and depriving him of access to ordinary credit opportunities.

18. Upon information and belief, on, or around, July 26, 2025, Plaintiff applied for credit with GM Financial.

19. Upon information and belief, after submitting his credit application, GM Financial denied Plaintiff's application based, in whole or in part, on information contained in his consumer report.

20. Upon information and belief, Defendant sold a consumer report to GM Financial that inaccurately indicated that Plaintiff was deceased.

21. As a direct result of Defendant's inaccurate reporting, Plaintiff's application for credit with GM Financial was denied.

22. Plaintiff subsequently reviewed his LexisNexis consumer report, which reflects an inquiry from GM Financial and Wells Fargo, and contains "deceased" indicators appearing on multiple accounts associated with Plaintiff.

23. Plaintiff was deeply distressed and humiliated by the denial of his credit applications.

24. As a direct result of Defendant's inaccurate reporting that Plaintiff is deceased, Plaintiff does not have a credit score.

25. As discussed above, Plaintiff is unable to obtain any credit because of the lack of a credit score.

26.   Plaintiff was particularly shocked and alarmed to discover that these denials were based on Defendant's erroneous representation that he was deceased, despite being alive.

27.   As a result of the "deceased" notation, the Defendant made it practically impossible for Plaintiff to obtain credit during the relevant time.

28.   At all times pertinent hereto, Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

29.   At all times pertinent hereto, the conduct of Defendant, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

30.   The Defendant is aware of the shortcomings of its procedures and intentionally chooses not to comply with the FCRA to lower its costs.  Accordingly, the Defendant's violations of the FCRA are willful.

31.   As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; complete debarment from participation in the financial and credit markets; and emotional distress, including

the mental and emotional pain, anguish, humiliation, and embarrassment of repeated credit denials.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to
### Assure Maximum Possible Accuracy
### (First Claim for Relief Against Defendant)

32.    Plaintiff incorporates by reference the preceding allegations as if fully stated herein.

33.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

34.    Defendant's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

35.    As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; complete debarment from participation in the financial and credit markets; and emotional distress, including

the mental and emotional pain, anguish, humiliation, and embarrassment of repeated credit denials.

36.   Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs and awarding Plaintiff such other and furth relief as the Court may deem appropriate and proper.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED,

Dated: March 30, 2026

/s/ *Atid Malka*
Atid Malka, GA Bar #705109
CONSUMER ATTORNEYS
2800 N Druid Hills NE, Building A, Suite D,
Atlanta, GA 30329
T: (718) 874-2914
E: amalka@consumerattorneys.com

*Attorneys for Plaintiff,*
*Danial Wayne Guise*

- 8 -